IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH B. BORGES and
MARIA R. BORGES,

       Plaintiffs,

vs.                                                   Civ. No. 02-1109 MV/LAM

UNITED STATES OF AMERICA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Strike Plaintiffs' Expert, filed June 3, 2003, **[Doc. No. 19]**, Defendant's Motion for Summary Judgment, filed June 20, 2003, **[Doc. No. 23]**, and Plaintiffs' Motion for Leave to Amend Complaint or for Remand, filed June 23, 2003, **[Doc. No. 25]**. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Defendant's Motion for Summary Judgment will be **DENIED** and Defendant's Motion to Strike Plaintiffs' Expert and Plaintiffs' Motion for Leave to Amend Complaint or for Remand will be **DENIED as moot**.

### FACTUAL BACKGROUND

Plaintiffs Joseph and Maria Borges ("Plaintiffs") challenge the Internal Revenue Service ("IRS") Appeals' approval of a levy against the Plaintiffs' assets to collect delinquent employment taxes.[1] In February, 2002, the IRS sent Plaintiffs a Notice of Intent to Levy to collect

---

[1] On Defendant's Motion for Summary Judgment, the facts must be taken in the light most favorable to Plaintiffs; accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiffs' evidence.

$414,997.05 in delinquent employment taxes owed by Plaintiffs' dairy, J&M Dairy, for tax years 1999 and 2000.  Plaintiffs timely requested a collection due process hearing with IRS Appeals.  Pursuant to this request, IRS Appeals held various conferences with Plaintiffs' representative, Sue Taylor, from May 2002 through July 2002.

On May 30, 2002, IRS Appeals Officer Angela Carmouche held a telephone conference with Taylor.  During this conference, Taylor told Carmouche that Plaintiffs wanted to pay the delinquent taxes through an installment plan because a levy would destroy J&M Dairy.  Taylor also mentioned that for 2001--a year not at issue in this case--Plaintiffs had incorrectly filed a Form 941 rather than a Form 943 and requested that all debits and credits attached to the Form 941 be moved to a correct Form 943.  Carmouche requested that Plaintiffs provide financial disclosures by June 25, 2002.

On June 28, 2002, Carmouche held a second telephone conference with Taylor.  Carmouche had not received Plaintiffs' financial disclosures yet, so Taylor and Carmouche discussed other compliance issues.  J&M Dairy had previously declared bankruptcy and Plaintiffs were paying bankruptcy debts, including employment taxes from 1995 and 1996 ("pre-petition taxes"), pursuant to a chapter 11 plan.  Carmouche questioned whether Plaintiffs' bankruptcy obligations would prevent them from honoring an installment plan.  Carmouche also expressed concern about recent underdeposits of J&M Dairy's 2002 employment taxes.  The parties discussed the fact that several payments intended for Plaintiffs' post-petition liabilities had been applied erroneously to Plaintiffs' pre-petition liabilities.

Shortly after the second telephone conference, Carmouche received a letter from Taylor enclosing Plaintiffs' financial disclosures and J&M Dairy's expense details; formally requesting the

Form 941 to Form 943 adjustment for 2001; and proposing a monthly installment plan for payment of the 1999-2000 taxes. Plaintiffs proposed minimum installment payments of $2,500 a month on the 1999-2000 taxes with an increase of $3,595 per month, for a total of $6,095 per month, after Plaintiffs had finished paying their pre-petition taxes. The letter did not indicate when the pre-petition taxes would be paid but did state that Plaintiffs had made approximately 46 payments of $3,500 towards the $176,544.20 owed in pre-petition taxes. The financial disclosures and other tax return reports showed that J&M Dairy's cash method net income had decreased from a $436,971 profit in 1998 to a $594,737 loss in 2001. Plaintiff's Collection Information Statement indicated that J&M Dairy's 2002 first quarter net income was $900.

On July 22, 2002, Carmouche received another letter from Taylor that explained the 2002 tax deposits and the corrective action taken for payment of the under-deposited amount; provided the dates and amounts of Plaintiffs' final payments on their bankruptcy obligations; and enclosed a statement regarding J&M Dairy's contributions to the local economy. The statement provided, in part, that closing J&M Dairy would create a hardship on the dairy's 55 employees and their families as well as on the surrounding rural communities, where the dairy spends over $9,000,000.00 annually. The letter requested that IRS Appeals approve an interim installment agreement until Plaintiffs qualified for an offer in compromise.

Carmouche determined that an installment plan would not be viable for three reasons. First, Plaintiffs had a history of compliance problems. Second, J&M Dairy's financial information did not show enough cash flow to make reasonable installment payments. Third, a monthly payment of $2,500 would not even cover the interest on Plaintiffs' tax debt. In addition, Carmouche determined that Plaintiffs did not qualify to make an offer of compromise due to the

missing 2002 tax deposit and because Plaintiffs had incorrectly filed a Form 941 for tax year 2001 instead of a Form 943.

On July 26, 2002, Carmouche held a conference with Taylor and explained her decision not to grant an installment plan. On July 29, 2002, Taylor sent a letter proposing an alternative installment plan based on the price of milk. Under this plan, the proposed $2,500 minimum monthly payment to the IRS would be increased by $1,000 for each $1 increase in the monthly "mailbox" milk price above $12. This increase would be in addition to the increase when Plaintiffs' pre-petition taxes were paid. In her letter, Taylor reiterated that the proposed levy would cause the dairy to close, resulting in hardship to the dairy's employees and possible death to the dairy cows and cattle, and requested that the IRS accept the installment agreement as an interim measure until Plaintiffs qualified to submit an offer in compromise. Carmouche discussed this proposal with Taylor, but, again, decided against an installment plan.

On August 6, 2002, IRS Appeals issued a Notice of Determination sustaining the IRS levy against Plaintiffs. The Notice concluded that a levy was appropriate because no viable collection alternative had been proposed. Plaintiffs' proposed installment plan was rejected because Plaintiffs had not demonstrated the financial ability to make the proposed installment payment; the proposed payment of $2,500 would be insufficient to full pay the liability and Plaintiffs would not have available funds to increase installment payments to the IRS in any significant amount until their bankruptcy obligations were satisfied in October 2005; and Plaintiffs had a history of poor compliance. The Notice stated that while an offer in compromise "may be a viable collection alternative," Plaintiffs would not be eligible to submit such an offer until the following month, at the earliest.

Plaintiffs timely filed their Complaint in this Court, seeking to have this Court overrule or reverse the decision of the Appeals Office and require the IRS to (1) suspend the enforcement action; (2) give due and proper consideration to an installment agreement and an offer in compromise; and (3) consider less intrusive actions against Plaintiffs in collecting the delinquent taxes. Defendant filed a motion for summary judgment arguing that IRS Appeals did not abuse its discretion when it decided not to grant an installment plan.

Plaintiffs subsequently filed a motion for leave to amend their complaint to challenge the correct amount of payroll taxes owed by Plaintiffs for tax years 1999 and 2000 or, in the alternative, for a remand to IRS Appeals to hold a hearing with a sufficient record of the evidence or arguments presented as well as the analysis used by the appeals officer in making the determination. Defendant opposes the amendment on the grounds that it is futile and causes undue delay and opposes the remand on the grounds that the record is sufficient. Defendant has also filed a motion to strike Plaintiffs' expert witness on the grounds that the Court's review is limited to the information before the Appeals Officer when the challenged decision was made and therefore expert testimony that was not provided to the Appeals Officer may not be considered by the Court.

## LEGAL STANDARD

I.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287,

1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

II.     Leave to File Amended Complaint

Under Rule 15 of the Federal Rules Of Civil Procedure, leave to file an amended

complaint is within the discretion of the Court and shall be freely given. Fed. R. Civ. P. 15. Absent an apparent reason to refuse leave to amend, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies through amendment, prejudice to an opposing party, or futility of amendment, a party should be given leave to amend. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962).

## DISCUSSION

I.      Statutory Structure

In July 1998, the Internal Revenue Service Restructuring and Reform Act of 1998 was enacted. Title 26 U.S.C. § 6331 provides that

> (a) Authority of Secretary--If any person liable to pay any tax neglects or refuses to do so within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person.

26 U.S.C. § 6331.

Before proceeding with the levy, however, the IRS must provide the taxpayer notice of the right to a hearing on the matter. 26 U.S.C. § 6331. The taxpayer then has a right to request a collection due process hearing ("CDP hearing") with the IRS Office of Appeals. 26 U.S.C. § 6330(a)(3)(B). The requirements for a collection due process hearing are set out in 26 U.S.C. § 6330. First, "[t]he appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." 26 U.S.C. § 6330(c)(1). Thereafter, the taxpayer "may raise . . . any relevant issue relating to the unpaid tax . . . ." 26 U.S.C. § 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive

any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. 26 U.S.C. § 6330(c)(2)(B). Finally, the appeals officer must consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)(C).

After the hearing, the Appeals Officer must send a Notice of Determination to the taxpayer that summarizes the matters raised during the hearing and that responds to any offers or objections made by the taxpayer. Under 26 U.S.C. § 6330(c)(3), the determination must be based on: (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) the issues raised by the taxpayer; and (3) the proper balance between the need for efficient tax collection and the legitimate concern that any collection action be no more intrusive than necessary. 26 U.S.C. § 6330(c)(3).

If the taxpayer is dissatisfied with the administrative determination, he or she may seek judicial review within 30 days of the Notice of Determination being issued either in the Tax Court or the appropriate United States District Court if the Tax Court does not have jurisdiction. 26 U.S.C. § 6330(d)(1). Judicial review is limited to matters properly raised at the administrative hearing. 26 C.F.R. § 301.6330-1T(f).

II.     Jurisdiction.

Pursuant to § 6330, the Tax Court has exclusive jurisdiction over appeals if it has jurisdiction over the alleged underlying tax liability. *See, e.g., True v. Commissioner*, 108 F.Supp.2d 1361, 1364 (M.D.Fla. 2000) (claimant is required to bring a § 6330 appeal in the Tax Court, so long as the Tax Court has jurisdiction of the underlying tax liability). If the Tax

Court does not have jurisdiction, then the appeal goes to a district court. *See* § 6330(d). The underlying tax liability in this case is employment tax. The Tax Court does not have jurisdiction over employment tax liabilities. *See id.*; *see also Moore v. Commissioner*, 114 T.C. 171 (2000) (district court, not the Tax Court, has deficiency jurisdiction over a redetermination of employment taxes); *STA Painting Co. v. I.R.S*, No. Civ.A. 02-CV-7133, 2004 WL 257393 (E.D.Pa. Feb. 11, 2004) (Tax Court does not have jurisdiction with respect to employment tax liability); *Abu-Awad v. United States*, 294 F.Supp.2d 879 (S.D. Texas 2003) (same). Because the Tax Court does not have jurisdiction over employment tax liabilities, the district court is the proper court in which to seek review of an administrative determination regarding the assessment of employment taxes.

III.     Standard of Review

Title 26 U.S.C. § 6330(d) provides for judicial review of the IRS's administrative determinations. The statute is silent, however, with respect to the standard of review that the reviewing court must apply. The Tenth Circuit has not yet addressed the appropriate standard of review under § 6330. Other courts, however, have uniformly adopted the standard of review set forth in the conference report accompanying the IRS Restructuring Act. *See, e.g., Goza v. Commissioner*, 114 T.C. 176, 181-182 (2000); *MRCA Information Services v. United States*, 145 F.Supp.2d 194, 199 (D.Conn. 2000). This report provides that in cases where the validity of the underlying tax liability itself is properly at issue, the administrative determination will be reviewed *de novo*. Where the validity of the underlying tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the Appeals Officer for abuse of discretion. H.R. Conf. Rep. No. 105-599, at 266 (1998).

While courts have uniformly adopted the standard of review set forth in the conference report, courts have differed in their interpretation of what standard of review the conference report provides is applicable when a taxpayer's appeal challenges the validity of the underlying tax liability as well as other administrative determinations.[2] Some courts have applied a *de novo* standard of review to *all* issues raised in an appeal if the validity of the underlying tax liability is one of the issues being appealed. *See, e.g., Tornichio v. United States*, 263 F.Supp.2d 1090, 1095 (N.D. Ohio 2002) (reviewing all issues raised in appeal *de novo* because the validity of the tax liability was properly part of the appeal). Other courts review the validity of the underlying tax liability *de novo* and all other administrative decisions challenged in the appeal under an abuse of discretion standard. *See, e.g., Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003) (reviewing underlying tax liability *de novo* and other administrative determinations for an abuse of discretion). The Court finds the latter approach more persuasive as there appears to be no compelling reason for the standard of review for similar administrative determination to vary depending solely upon whether the validity of the underlying tax liability is one of the determinations being disputed. Consequently, absent any guidance from the Tenth Circuit, the Court will follow those courts that review the validity of the underlying tax liability *de novo* and the remainder of the issues raised in the appeal under an abuse of discretion standard.

Under the abuse of discretion standard, a "decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of

---

[2] While Plaintiffs' Complaint does not challenge the validity of the underlying tax liability, Plaintiffs have filed a motion to amend their complaint to put the amount of their tax liability at issue. Consequently, the Court must determine if a different standard of review will apply to this appeal if Plaintiffs' motion to amend is granted.

judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)). An abuse of discretion occurs when the decision is "arbitrary, capricious or whimsical," or results in a "manifestly unreasonable judgment." *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987). The Court's abuse of discretion review is limited to the information available to the Appeals Officer when the decision was made. *See, e.g., Sego v. Commissioner*, 114 T.C. 604, 610 (2000) (matters raised after the hearing do not reflect on whether the determinations are an abuse of discretion).

IV.     Motion for Summary Judgment

The Notice of Determination indicates, and Plaintiffs do not dispute, that the IRS Appeals Officer complied with all of the applicable law and procedures. Plaintiffs assert, however, that the Appeals Officer made a number of errors, and, as a result, did not properly balance the need for the efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary.

Plaintiffs contend that even though they questioned whether IRS records of their tax liabilities were accurate, the Appeals Officer issued her decision rejecting Plaintiffs' proposed collection alternatives prior to determining the correct amount of taxes due. As a result, the Appeals Officer determined that Plaintiffs were not financially able to pay an installment plan based, in part, on the erroneous determination that Plaintiffs owed $709,431.70 in taxes, including over $170,000 in pre-petition taxes, when Plaintiffs' pre-petition taxes had been paid in full.

The record reveals that Plaintiffs raised the issue of the correct amount of their outstanding taxes, in particular, whether payments intended for Plaintiffs' 1999-2000 taxes had

been misapplied to Plaintiffs' pre-petition taxes even after the pre-petition taxes had been paid in full. The Notice of Determination notes that "several payments intended for the post-petition liabilities were applied erroneously to periods covered by the bankruptcy" and "that taxpayer is working with Compliance to transfer misapplied payments to the liabilities for which they were intended." The Appeals Officer issued her decision on collection alternatives, however, without first confirming the correct amount of Plaintiffs' outstanding tax liability.[3] As a result, the Notice of Determination overstated Plaintiffs' total tax liability by at least $170,000.[4]

Failure to resolve the correct amount of Plaintiffs' outstanding taxes resulted in additional errors in the Notice of Determination. For example, the Notice of Determination rejected a proposed installment payment of $2,500 per month as inadequate and noted that a significant increase in this payment would not be possible until October 2005, when Plaintiffs completed payments under their bankruptcy plan. At the time the Notice was issued, however, Plaintiffs' pre-petition taxes had been paid in full and, therefore, Plaintiffs' proposed installment payment was actually $6,095 per month, not $2,500. If the Appeals Officer had resolved the issue of Plaintiffs' outstanding employment tax liabilities prior to issuing the Notice, the Appeals Officer would have known that Plaintiffs' pre-petition liabilities had been paid in full and could have

---

[3] The fact that Plaintiffs' pre-petition tax liabilities were substantially less than the amount stated in the Notice of Determination was apparent from Plaintiffs' June 27, 2002 letter to the Appeals Officer in which Plaintiffs stated that they had made 36 payments of approximately $3,500 each (approximately $161,000.00) toward their pre-petition tax liabilities.

[4] Defendant has submitted a declaration stating that Plaintiffs' current employment tax liabilities are $450,454.00.

evaluated the proposed installment plan accordingly.[5]

Plaintiffs challenged the amount of their total tax delinquency at their CDP hearing. The Appeals Officer, however, issued her Notice of Determination prior to determining the amount of Plaintiffs' tax delinquency. As a result, the Notice of Determination rejected Plaintiffs' request for an installment plan based on erroneous information, including an overstatement of Plaintiffs' outstanding employment taxes by at least $170,000.00 and an understatement of Plaintiffs' proposed monthly payment by $3,095. These errors may or may not have affected the Appeals Officer's ultimate determination. However, the Court finds that when a challenge to the amount of delinquent taxes has been raised and the viability of a proposed collection alternative depends, in part, on the amount of taxes due, issuing the Notice of Determination prior to determining the correct amount of taxes due is an abuse of discretion. Therefore, the Court will remand this matter to IRS Appeals for a new CDP hearing and Notice of Determination.

Given the Court's determination that this matter must be remanded to IRS Appeals due to the Appeals Officer's failure to resolve the amount of Plaintiffs' outstanding tax liability prior to issuing the Notice of Determination, the Court will not reach the remaining errors alleged by Plaintiffs. The Court notes, however, that the Appeals Officer rejected Plaintiffs installment plan, in part, due to her determination that J&M Dairy was "on the brink of collapse." The Appeals Officer appears to have based her determination, in part, on Schedule F of Plaintiffs' tax return. Plaintiffs contend, however, that "it is basic knowledge that Schedule F of a tax return filed by a

---

[5] While the burden is on Plaintiffs to provide accurate financial information, in this case, Plaintiffs raised the issue of whether payments intended for their 1999-2000 tax liabilities had been misapplied to their pre-petition liabilities. The information on how the payments were applied, and, consequently, how much remained to be paid, was contained in IRS records and was not in the Plaintiffs' possession.

farmer, including a dairy farmer, does not reflect the financial health of the business operation."
Plaintiffs assert that other information reported on the same tax return, and therefore available to the Appeals Officer, shows that J&M Dairy was profitable.  The record before the Court is insufficient to determine what financial analysis was performed by the Appeals Officer.  On remand, IRS Appeals is instructed to prepare a record that contains sufficient information on the financial analysis undertaken by the Appeals Officer to permit this Court to determine if the Appeals Officer abused his or her discretion.  *See, e.g., Mesa Oil, Inc. v. U.S.*, No. Civ.A. 00-B-851, 2000 WL 1745280, *7 (D.Colo. Nov. 21, 2000) (holding that the informality of a CDP hearing "does not completely obviate the need for a record of some sort. While a full stenographic record is not required, there must be enough information contained in the documentation created by the IRS for a court to draw conclusions about statutory compliance and whether the [Appeals Officer] abused his or her discretion.").

V.      Plaintiffs' Motion to Amend and Defendant's Motion to Strike

Plaintiffs have filed a motion to amend their complaint to seek a determination of the amount of employment taxes owed, or in the alternative, for a remand to the IRS Appeals Office with direction to hold a hearing with a sufficient record of the evidence or arguments presented and the analysis used by the Appeals Officer.  As discussed above, the record reveals that Plaintiffs properly raised the issue of the correct amount of their outstanding tax liability at the CDP hearing, and are therefore entitled to appeal the issue to this Court.  However, given the Court's determination that this matter must be remanded to IRS Appeals for a new CDP hearing and Notice of Determination, at which time Plaintiffs may raise the issue of the correct amount of their outstanding tax liabilities and the IRS will be afforded the opportunity to resolve this issue in

the first instance, the Court will deny Plaintiffs' motion to amend their complaint as moot. For the same reasons, Defendant's Motion to Strike Plaintiffs' Expert also will be denied as moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint or for Remand, filed June 23, 2003, **[Doc. No. 25]** is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiffs' Expert, filed June 3, 2003, **[Doc. No. 19]** is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, filed June 20, 2003, **[Doc. No. 23]** is hereby **DENIED.** This matter is hereby remanded to IRS Appeals for a new Collection Due Process hearing before a different Appeals Officer to determine the amount of employment tax liabilities owed by Plaintiffs and, after Plaintiffs' outstanding employment tax liabilities have been determined, consideration of potential collection alternatives. In addition to the evidence and argument presented at the hearing, the record of this hearing should contain sufficient information on the analysis undertaken by the

Appeals Officer, including the analysis of Plaintiffs' financial condition, to permit this Court to determine if the Appeals Officer abused his or her discretion.

Dated this 3rd day of March, 2004.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
    Robert H. Jacobvitz, Esq.
    David T. Thuma, Esq.
    Thomas H. Toevs, Esq.

Attorneys for Defendant:
    Christopher R. Egan, Esq.